IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY AG ENTERPRISES,<br><br>             Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>             Defendant | CV F 03-6366  AWI SMS<br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSAL OF PENDING MOTIONS AS MOOT** |

      This is a proceeding in a bankruptcy case involving plaintiff and debtor-in-possession, Central Valley Ag Enterprises ("Central Valley" or "Plaintiff") and priority claimant and defendant United States ("Defendant"). The purpose of the action in this court has been to adjudicate Defendant's priority claim against the bankruptcy estate for taxes, penalties and interest for the years 1993, 1994, and 1995 that resulted from the disallowance by IRS of certain losses claimed by Plaintiff's wholly owned subsidiary, Orange Coast Enterprises, Inc. ("OCE") as a part of a "lease stripping tax shelter" arrangement.  In the instant motion, Defendant somewhat belatedly moves for summary judgment or summary adjudication on the ground the court lacks jurisdiction over the underlying controversy because Defendant's priority tax claim was conclusively settled when Plaintiff failed to contest the Notice of Final Partnership Administrative Adjustment  within the statutory time period of 150 days.  This

Court has original subject matter jurisdiction pursuant to 28 U.S.C., sections 1331 and 1340. Venue is proper in this Court.

## PROCEDURAL HISTORY

On December 3, 2001, Central Valley filed a voluntary Chapter 11 bankruptcy petition. Central Valley was formerly engaged in the business of manufacturing under the name Ironclad, Inc., and other names. Central Valley listed approximately $7 million in assets. The bankruptcy estate has a number of unsecured claims including approximately $250,000 in uncontested claims and approximately $5 million in non-tax, disputed claims. On October 9, 2002, the IRS filed a first amended unsecured priority claim for taxes, penalties and interest for the years 1993, 1994, and 1995 in the total amount of approximately $13.1 million. On April 2, 2003, Central Valley filed an objection to the amended claim.

On September 12, 2003, the United States filed a motion for withdrawal of the reference from the bankruptcy court. That motion was granted on January 7, 2004. Initially, the court remanded the issue of the validity of the lease-stripping tax arrangement to the bankruptcy court for submission of proposed findings of fact and conclusions of law. That remand was subsequently vacated on November 30, 2004. The instant motion for summary judgment was filed by Defendant on January 11, 2005. Following the submission of opposition and reply briefs, the matter was taken under submission on February 28, 2005.

During the pendency of the instant motion, Plaintiff filed a pleading that is referred to on the docket report as "Plaintiff's First Motion for Summary Judgment." Following submission of opposition and reply briefing, that motion was taken under submission on April 4, 2005. Plaintiff subsequently filed a motion titled "Motion for Partial Summary Judgment Relating to Tax Penalties" on April 6, 2005. Defendant has filed an ex parte application for continuance of time to answer plaintiffs latest motion for partial summary judgment relating to penalties. In that motion Defendant asks for continuation of the briefing on Plaintiffs motions because the court's conclusion with respect to the instant motion will

either moot or focus the issues related to Plaintiff's pending motions.

**FACTUAL BACKGROUND**

In 1991 Plaintiff's wholly owned subsidiary, OCE acquired a 98% interest in Astropar Leasing Partnership ("Astropar"). The remaining 2% of Astropar was owned by a partnership of the promoter of the lease-stripping tax arrangement and certain of the promoter's officers. A description of the lease-stripping tax arrangement and the relationships of the various entities that were related to the arrangement were previously described in this court's Memorandum Opinion and Order Granting Mandatory Withdrawal of the Reference, and need not be repeated here. See Document # 9. Defendant alleges that Astropar reported significant net losses attributable to alleged leasing activities on its partnership tax returns from fiscal years 1993, 1994, and 1995. These partnership losses were passed through OCE to Plaintiff. On audit of the Astropar partnership returns for the years in question, the IRS determined that the reported losses arose out of transactions that lacked economic substance and should be disallowed.

In 1996 the IRS sent copies of its summary examination report ("RAR") for fiscal years 1993 and 1994 to Astropar and to Astropar's legal representative at OCE's corporate address. In 1998, the IRS sent copies of the RAR for fiscal year 1995 to Astropar and its legal representative. On August 21, 1998, Astropar challenged the adjustments for the fiscal years 1993 through 1995 and requested a hearing with the Appeals Office for the IRS. In March 2001, the IRS Appeals Officer recommended that the audit adjustments disallowing Astropar's tax shelter losses be sustained in full and that a Notice of Final Partnership Administrative Adjustment ("FPAA") be issued.

Defendant alleges that on March 28, 2001, the IRS mailed an FPAA to the two Astropar partners, OCE and STM-CIG. Neither partner filed a petition in Tax Court, or any other court, to commence a partnership-level proceeding to contest the IRS determinations. The voluntary bankruptcy petition that underlies this case was filed on December 3, 2001, a

date that is 250 days after the FPAA's were mailed. On April 2, 2003, Plaintiff filed an objection in the bankruptcy proceeding to the amended claim of the IRS, contending that the losses from the lease-stripping tax shelter should be allowed.

## LEGAL STANDARD

Defendant's motion is presented as a motion for summary judgment, however sole the basis for the motion is Defendant's contention the court lacks subject matter jurisdiction. Normally, where subject matter jurisdiction is lacking, a motion to dismiss pursuant to Rule[1] 12(b)(1) of the Federal Rules of Civil Procedure is appropriate. If a Rule 12(b)(1) motion is made after the defendant has filed a responsive pleading, "it was technically untimely." Augustine v. United States, 704 F.2d 1074, 1075 n. 3 (9th Cir.1983). However, issues concerning subject matter jurisdiction may be raised by the parties at any time pursuant to Rule12(h)(3). Thus, a defendant can file a motion to dismiss based on subject matter jurisdiction even after a responsive pleading has been filed pursuant to Rule 12(h)(3). Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 955 n.2 (9th Cir. 2004). The court concludes the motion is more properly addressed as a motion to dismiss pursuant to Rule 12(h)(3), which provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

It is a fundamental precept that federal courts are courts of limited jurisdiction. Limits upon federal jurisdiction must not be disregarded or evaded. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). The plaintiff has the burden to establish that subject matter jurisdiction is proper. Kokkonen v. Guardian Life Ins. Co., 114 S. Ct. 1673, 1675 (1994). This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for this court to assert subject matter jurisdiction over the action. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Fed. R. Civ.

---

[1] References to Rules hereinafter are to the Federal Rules of Civil Procedure unless otherwise specified.

4

P. 8(a)(1).

When a defendant challenges jurisdiction "facially" all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. Titus v. Sullivan, 4 F. 3d 590, 593 (8th Cir.1993); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F. 2d 884, 891 (3d Cir.1977); Cervantez v. Sullivan, 719 F. Supp. 899, 903 (E.D. Cal.1989), rev'd on other grounds, 963 F. 2d 229 (9th Cir.1992).

A defendant may also "attack the existence of subject matter jurisdiction in fact, quite apart from any pleading," Mortensen, 549 F. 2d at 891, and rely on evidence extrinsic to the pleading.

## DISCUSSION

### I. Defendant's Contentions

It is not disputed that Astropar was a partnership. Defendant contends that in enacting the Tax Equity And Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, 96 Stat. 324, Congress provided that the tax treatment of all partnership items of income, loss, deductions, and credits, would be determined at the partnership level in a unified partnership proceeding. See 26 U.S.C., section 6221 (". . . the tax treatment of any partnership item [. . .] shall be determined at the partnership level"). Defendant contends that Astropar is a partnership subject to the procedures of tax determination set forth in TEFRA, now codified at 26 U.S.C. sections[2] 6221 to 6234. Plaintiff does not dispute that Astropar is a partnership subject to the provisions of TEFRA, nor do there appear to be any exclusions to those provisions that would apply to Astropar.

Section 6223 provides, *inter alia* that the IRS shall furnish to each partner whose name and addressed are furnished to the IRS notice of "(1) the beginning of an administrative

---

[2] References to section numbers hereinafter refer to sections to Title 26 of the United States Code unless otherwise noted.

proceeding at the partnership level with respect to a partnership item, and (2) the final partnership administrative adjustment resulting from any such proceeding." The parties do not dispute that the Astropar partners, OCE and STM-CIG received proper notice of both the institution of the administrative proceedings and the issuance of the FPAA that resulted from the proceeding. Defendant contends, and Plaintiff does not dispute that the administrative proceedings were procedurally proper, including the required timely notice of the FPAA to the required parties.

Section 6226 provides in pertinent part:

> Within 90 days after the day on which a notice for a [FPAA] is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership item for such taxable year with –
>
> (1) the Tax Court
>
> (2) the district court of the United States for the district in which the partnership's principal place of business is located, or
>
> (3) the court of federal claims.

In addition to the 90-day period within which the tax matters partner[3] may file a petition for readjustment, subdivision (b) of section 6226 provides that any notice partner or any five percent group may file a petition for readjustment during the 60-day period following the 90-day period in which the tax matters partner ("TMP") may file. Thus, at the partnership level, there is a 150-day total period during which a petition for reconsideration may be filed with respect to any partnership item. This 150-day period constitutes a statute of limitations that establishes time limits on the ability of a partner to challenge an IRS determination as reflected in the FPAA. See Genesis Oil & Gas, Ltd. v. Comm'r Internal Revenue, 93 T.C. 562, 565-566 (1989) (where neither TMP or the notice partner filed a timely petition, "they have lost their right to contest, in any court, [IRS's] determination in the FPAA").

---

[3] The tax matters partner is either the general partner so designated or the general partner having the largest profits interest in the partnership. § 6231(a)(7).

6

It is undisputed that OCE was the TMP within the Astropar partnership and that the IRS mailed an FPAA to OCE, as well as to the other Astropar partners, on March 28, 2001. It is also undisputed that neither OCE nor the other Astropar partner ever filed a petition for readjustment at the partnership level in any court with respect to the IRS decision to disallow the lease-stripping tax shelter as reflected in the FPAA. Thus, the maximum 150-day period of time during which any party could have filed a petition for readjustment of the FPAA commenced on March 28, 2001, and had run well before Plaintiff filed its bankruptcy petition on December 3, 2001, some 250 days after the FPAA's were mailed to the Astropar partners.

Defendant correctly points out that outside of the bankruptcy setting, there is no question that OCE or OCE's parent company, Central Valley, would not be able to contest the tax liability as reflected in the FPAA in any forum. Section 6221 requires that the tax treatment of partnership items be determined at the partnership level and any challenge to a FPAA determination at the partnership level be brought within the 150-day statutory period. See Randell v. United States, 64 F.3d 101, 108 (2nd Cir. 1995) (IRS determination of income is a partnership item that cannot be challenged at the individual partner level); Genesis Oil & Gas, 93 T.C. at 565 ("Congress has provided for limited access to the courts to raise any and all questions pertaining to a partnership action within the 90 days after mailing of the FPAA to the [TMP], plus a 60-day period for any notice partner.")

The parties do not dispute that the issuance of the FPAA by the IRS was procedurally proper in all respects, or that Plaintiff or its subsidiary OCE did not challenge the FPAA at the partnership level within the statutory 150-day period, or that the underlying bankruptcy petition was not filed until 100 days after the statutory 150-day period had passed. Defendant contends that on the basis of these facts, the court lacks jurisdiction to adjudicate the merits of Plaintiff's dispute as to Defendant's priority claim against the bankruptcy estate.

**II. Plaintiff's Contentions**

Plaintiff contends that the court has jurisdiction over the determination of Defendant's

7

tax claim pursuant to the provisions of section 505 of the Bankruptcy Code. Section 505 of the Bankruptcy Code provides, in pertinent part:

> (a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax , or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.
>
> (2) The court may not so determine –
>
> (A) the amount or legality of a tax, fine, penalty or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title;

11 U.S.C. § 505.

Plaintiff's core contention is that this court has jurisdiction over the determination of the legality of Defendant's priority tax claim because section 505 of the Bankruptcy Code ("Section 505") confers jurisdiction in bankruptcy proceedings over the legality of a tax determination whether or not the statute of limitations has run on that determination outside of bankruptcy proceedings. The parties agree that the issue of whether the failure of either the TMP or a notice partner to timely request a judicial determination of the legality of a FPAA pre-petition divests the court of jurisdiction to consider the merits of the issue under Section 505 is one of first impression.

Plaintiff correctly points out that the purpose of Section 505 is to protect creditors from debtor inaction. In re Galvano, 116 B.R. 367 (Bankr. N.D. N.Y. 1990). It reasons from this that the scope of jurisdiction of the bankruptcy court should include cases such as the one at bar where debtor inaction resulted in the loss of the right to appeal the FPAA in district court or tax court. In short, Plaintiff contends that the jurisdictional grant in Section 505 overcomes the statutory time limits in TEFRA and allows judicial determination of the FPAA in Bankruptcy court even though such a challenge would be barred in any other forum.

**III. Court's Analysis**

There is legal support for the proposition that the failure to contest a tax assessment pre-petition within the statutory period does not deprive the court of jurisdiction to review the merits of the assessment under Section 505 in the context of a bankruptcy proceeding. In <u>In re Robins Co., Inc.</u>, 126 B.R. 227 (Bankr. E.D. Va. 1991), the bankruptcy court opined that "[a]n issue decided by *default* judgment has not been 'contested before and adjudicated by' a tribunal so as to deprive the Court of jurisdiction under § 505(a)(2)." <u>Id.</u> at 229 (emphasis added).  In <u>Robins</u>, as well as in other cases this court has reviewed the issue of the scope of jurisdiction under Section 505 often turns on whether there was a pre-petition proceeding that constituted a contest and adjudication of the tax liability before an administrative tribunal of competent jurisdiction.  It is on this issue that Plaintiff's argument fails.

Section 505(a)(2) provides the bankruptcy court may not determine a tax liability that was previously determined by "a judicial or administrative tribunal of competent jurisdiction before the commencement of the case."  Taken as a whole, the procedures described in 26 U.S.C., sections 6221 - 6234 describe an administrative process for the determination of tax treatment at the partnership level that includes a preliminary audit level as well as the opportunity for judicial review.  The question then is whether the procedure set forth in TFERA describes proceedings in "a judicial or administrative tribunal of competent jurisdiction" within the meaning of Section 505.

The issuance of an FPAA is a part of an administrative proceeding that comports with due process notice requirements. See <u>Abelein v. United States</u>, 323 F.3d 1210, 1215 (9th Cir. 2003) (issuance of an FPAA part of an administrative proceeding); <u>Walthall v. United States</u>, 131 F.3d 1289, 1295 (9th Cir. 1997) (notice requirements of the proceeding comports with due process requirements).  The facts set forth by the parties in this case also establish that prior to the issuance of the FPAA, the partnership representatives had the opportunity to provide evidence and receive discovery, to be represented by counsel and to have a hearing

9

on the issues. See Prochorenko v. United States, 243 F.3d 1359, 1366 (Fed. Cir. 2001) (discussing discovery issues in context of partnership audit); 26 U.S.C., § 6224 (discussing agreements). In addition to those due process rights provided by the initial proceedings under TEFRA, the *opportunity* is also provided for judicial determination of the legality of the FPAA upon timely petition.

TEFRA incorporates both the audit function and the opportunity for judicial review into a single integrated statutory scheme. The language of Section 505(a)(2)(A) focuses the analysis on the question of whether the prior determination of the tax issue presented the parties with a full and fair *opportunity* to contest the IRS"s determination of the partnership tax issue. In re Teal, 16 F.3d 619, 622 (5th Cir. 1994) (emphasis added). As Plaintiff correctly points out, whether an issue may be reviewed under Section 505 in a bankruptcy proceeding is essentially dependant on whether or not the pre-petition determination of the issue would have preclusive effect on the subsequent determination in bankruptcy court.[4] The issue of preclusive effect, in turn, hinges on the *opportunity* for full and fair hearing on the issues. Id. Plaintiff's contention that the procedures outlined in TEFRA do not result in a full and fair opportunity to contest the IRS's determination is erroneous. The procedures set forth by TEFRA, considered as a whole, present the *opportunity* for full and fair litigation of the issue. Whether a party chooses to avail itself of the fullest extent of that opportunity is of no moment.

Both Plaintiff and Defendant miss the mark by focusing on the FPAA, which is the product of the process set forth in TEFRA, rather than the process itself. Defendant's

---

[4] Plaintiff contends in summary fashion that the procedures that were followed by Plaintiffs, including administrative appeal of the RAR, are not *res judicata* as to the merits of the case. Because the court finds, contrary to Plaintiffs contention, that the TEFRA procedures do present an opportunity for full and fair contest of the issues, the court need not address whether there is *res judicata* or collateral estoppel effect, or both. The court's conclusion that there was an *opportunity* for the parties to fully and fairly contest the issue in a judicial forum means the issue was conclusively decided by a tribunal of competent jurisdiction prior to the bankruptcy petition and the terms of Section 505(a)(2)(A) preclude reconsideration of the issue in bankruptcy court.

characterization of Plaintiff's failure to timely request a redetermination of the FPAA as a "default" is improvident in this context. "Default" implies a failure to litigate on the merits and implicates issues of *res judicata* but not collateral estoppel. In re Townview Nursing Home, 28 B.R. 431, 444 (S.D. N.Y. 1983). Here, there is no failure to litigate and therefore no "default." The uncontested facts submitted by the parties indicates that the Astropar partners participated fully in the proceedings described by TEFRA up to the point of issuance of the FPAA. At that point both OCE and STM-CIG decided, for whatever reason, to pursue the matter no further and the FPAA became final and incontestable when the statutory period lapsed. The critical point is that Plaintiff' could have, under the terms of TEFRA, proceeded to judicial review of the FPAA. Plaintiff does not allege or present evidence that OCE was prevented from availing itself of the opportunity presented by TEFRA to challenge the IRS's determination in a judicial setting.

The parties seem to present this case as representing a collision between Section 505 of the Bankruptcy Code and the provisions of TEFRA. There is no collision here. The issue of Plaintiff's tax obligation as reflected by the disallowance of the losses from the lease-stripping tax shelter became final by operation of the statutory terms of TEFRA. As the court interprets the terms of TEFRA, this means the matter was "contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title." As a consequence, the tax issue falls within the limitation set forth in 11 U.S.C. § 505(a)(2)(A) and may not be contested within the context of bankruptcy proceedings.

**IV. Withdrawal of the Reference and Pending Motions**

The court notes that withdrawal of the reference to the bankruptcy court was granted for the limited purpose of making a determination of the legality of the lease-stripping tax shelter. While it is regrettable that the issue of jurisdiction has been raised at this late date, the court now must conclude the IRS's determination of OCE's tax burden as reflected in the

FPAA has become non-reviewable by operation of the provisions of TEFRA and this court is without jurisdiction to adjudicate the issue. In short, there is nothing left for this court to decide that pertains to the limited issue for which withdrawal of the reference was granted. The withdrawal of the reference will therefore be vacated.

In reviewing the Plaintiff's pending motions, the court notes that the issues raised in those motions does not pertain directly to the issue this court identified for itself when the withdrawal of the reference was granted. Plaintiff's first motion for summary judgment (Doc. 40, filed February 22, 2005) raises the issue of whether Defendant's unsecured priority claims for the years 1993 to 1995 (claims 53 and 54) are time barred under bankruptcy rules. Plaintiff's motion for partial summary judgment (Doc. 66, filed April 6, 2005) disputes the application of penalties pursuant to claims 53 and 54, principally on the ground those claims are time barred. Neither of these motions pertain to the limited purpose for which the reference to the bankruptcy court was withdrawn. From this court's perspective, both motions implicate only well settled issues of bankruptcy law and do not implicate any laws outside of bankruptcy that would warrant the removal of the reference as to those issues. The court concludes the pending motions should have been filed in the bankruptcy court and were improperly filed in this court. The motions will be dismissed without prejudice as improperly filed.

THEREFORE, in consideration of the foregoing discussion, it is HEREBY ORDERED that:

1.  Defendants motion to dismiss for lack of subject matter jurisdiction is GRANTED. OCE's tax obligation as established by the FPAA is deemed conclusively established and incontestable for purposes of this bankruptcy proceeding.
2.  The court's order of January 2, 2004, granting withdrawal of the reference to the bankruptcy court is hereby VACATED.

12

3.   Plaintiffs pending motions, Document 40 and Document 66, are hereby DISMISSED without prejudice as improperly filed.  The motions may be refiled in the bankruptcy court and a new hearing date scheduled with that court.

4.   Plaintiff's motion for permission to file objection (Document 47), and Defendant's *ex parte* motion for continuance of time (Document 67) are both DENIED as moot.

IT IS SO ORDERED.

**Dated:   April 27, 2005**             _____/s/ Anthony W. Ishii_____
h2ehf                                                    UNITED STATES DISTRICT JUDGE

13